UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PSC METALS, INC., | ) |
| Plaintiff/Counter-defendant, | ) ) ) |
| v. | ) Case No. 3:17-cv-01088 |
| | ) Judge Aleta A. Trauger |
| SOUTHERN RECYCLING, LLC, | ) ) |
| Defendant/Counter-plaintiff. | ) |

REDACTED **MEMORANDUM & ORDER**

On August 28, 2017, the court granted summary judgment in favor of PSC Metals, Inc. ("PSC") for breach of contract and denied summary judgment on counterclaims brought by Southern Recycling, LLC ("Southern"). (Docket No. 143.) The only outstanding issue in this case is the amount of damages, if any, to which PSC is entitled. During a telephone conference on January 4, 2019, the parties agreed that the forward progress of the case requires resolution of whether, as a matter of law, PSC may recover expectancy damages for Southern's breach of the parties' "Non-Binding Letter of Intent" ("LOI"). The court ordered the parties to submit supplemental briefing on the issue. (Docket No. 153.) On January 23, 2019, PSC filed its Brief supporting its entitlement to such damages. (Docket No. 155.) Southern filed a Response on February 6, 2019, (Docket No. 159), to which PSC filed a Reply on February 15, 2019 (Docket No. 162). For the reasons set forth herein, the court finds that PSC may not recover expectancy damages for Southern's breach of the LOI.

## BACKGROUND

PSC and Southern are scrap metal recycling companies. On December 9, 2015, they entered into a Confidentiality and Non-Disclosure Agreement ("NDA") as part of discussions

regarding PSC's potential purchase of Southern's Nashville assets and business operations. (Docket No. 9-1.) The discussions continued through 2016 and, on January 20, 2017, the parties signed the LOI. (Docket No. 9-2.) Although non-binding with regard to the terms and structure of the potential acquisition, the LOI included a binding exclusivity provision that granted PSC exclusive negotiating rights with Southern.



On March 7, 2017, Southern's president, John Fellonneau, received an inquiry regarding Southern's Nashville assets and business operations from an interested third party, Ferrous Processing and Trading ("FPT"). Like Southern and PSC, FPT is a scrap metal recycling company in the Nashville area. The inquiry came via telephone from William Sulak, FPT's Southeast Regional Director. Sometime following the March 7 call, Sulak arranged a meeting for himself, Fellonneau, and FPT's president, Dave Dobronos, to take place during an April industry convention in New Orleans. Meanwhile, negotiations between Southern and PSC continued pursuant to the terms of the LOI. On April 20, 2017, PSC provided a draft Asset Purchase Agreement ("APA") to Southern.

One week later, on April 27, 2017, the men met in the cocktail lounge of an unidentified New Orleans restaurant. Dobronos raised the possibility of Southern's selling its Nashville assets to FPT. Fellonneau responded that Southern was not for sale unless someone was willing to pay $30 million. The matter was not discussed further at the meeting. On May 10, 2017, Southern provided PSC with a response to its April 20 draft APA and requested a draft from PSC of other deal-related documents. On May 21, 2017, the exclusivity period expired. Two days later, Sulak phoned Fellonneau to again express FPT's interest in Southern's Nashville assets. ████████████████████████████████████████████████████ The following day, Fellonneau notified Southern's Board of Managers of FTP's inquiry.

Southern subsequently denied a request from PSC for an extension of the exclusivity period. But Southern continued to engage in negotiations with PSC, including a face-to-face meeting on May 30, 2017, followed by other discussions. (Docket No. 29-1 (First Declaration of Kevin Lewis).) On June 9, 2017, Southern contacted FPT to discuss due diligence requirements for a proposed asset purchase. Later that month, Southern provided FPT with high level terms for a potential deal. On July 7, 2017, Southern suspended discussions with PSC via email. The email stated that Southern had "received an indication of interest in our Nashville assets from another party indicating a superior price as well as more favorable terms." (Docket No. 75-6.) Ultimately, no deal was reached with FPT, and Southern decided not to sell its Nashville assets.

On July 26, 2017, PSC filed suit for breach of contract, promissory estoppel, and breach of the duty of good faith and fair dealing. On April 5, 2018, Southern filed its Answer and Counterclaim against PSC (Docket No. 91), alleging that PSC breached the NDA and LOI prior to Southern's alleged breach of the LOI. On April 13, 2018, PSC filed a Motion for Partial Summary Judgment, seeking judgment that Southern breached the LOI in the April 27, 2017

meeting with FPT. (Docket No. 94). On July 25, 2018, PSC moved for summary judgment on Southern's counterclaim. (Docket No. 132.) The court granted PSC's motions on August 27, 2018, finding that Southern breached the LOI's exclusivity provision and waived its right to assert a first material breach by PSC. (Docket No. 142.)

PSC now seeks approximately $90,000 in reliance damages and approximately $21.6 million in expectancy damages. (Docket No. 151-1 at 2–5.) Its alleged expectancy damages are based in part on a calculation of the value of Southern's Nashville business. (*Id.* at 3.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* at 2.) Southern asserts that only reliance damages are available as a matter of law.

## ANALYSIS

Whether PSC may recover expectancy damages for Southern's breach of the exclusivity provision presents a novel issue of law. "Courts and scholars have quibbled about the appropriate measure of damages when a contract to negotiate has been breached. In the opinion of some, damages should be limited to the sums spent in reliance on the broken promise. In the opinion of others, expectancy damages may be available." *Butler v. Balolia*, 736 F.3d 609, 615–16 (1st Cir. 2013) (internal citations omitted); *see also Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc.*, 519

4

F.3d 421, 429 (8th Cir. 2008) (Whether to "categorically preclude[e] benefit-of-the-bargain damages for all breaches of binding preliminary agreements . . . is a difficult, largely unsettled question of remedies."). "[T]he choice of the proper measure of damages is a question of law to be decided by the court." *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 228 (Tenn. Ct. App. 2006). However, no Tennessee court has weighed in on the availability of expectancy damages for beach of a preliminary agreement. "When resolving an issue of state law," a federal court must "look to the final decisions of that state's highest court, and if there is no decision directly on point, then [it] must make an *Erie* guess[1] to determine how that court, if presented with the issue, would resolve it." *In re Fair Fin. Co.*, 834 F.3d 651, 671 (6th Cir. 2016) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013)). The inquiry before the court is therefore whether the Tennessee Supreme Court would allow expectancy damages for breach of a non-binding letter of intent's binding exclusivity provision.

As a general matter, "[e]xpectancy damages are recoverable when they are actually foreseen or are reasonably foreseeable, are caused by the breach of the other party, and are proven with reasonable certainty." § 12:5. Damages—Expectation damages, 22 Tenn. Prac. Contract Law and Practice § 12:5. The role of foreseeability in the context of expectancy damages can be traced back to the seminal contract law case of *Hadley v. Baxendale*, 156 Eng. Rep. 145 (1854). In *Hadley*, a grist mill was forced to suspend operations because of a broken shaft. *Id.* A mill employee took the shaft—for which the mill had no replacement—to a carrier for shipment to an engineering company, which needed the broken shaft in order to build a new one. *Id.* The employee did not explain to the carrier that the shaft was critical to the mill's functioning. *Id.* The carrier, without good reason, delayed shipment of the shaft for several days; as a result, the mill

---

[1] "*Erie* guess" refers to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

5

was shut down for longer than expected and incurred significant lost profits. *Id.* The court did not find the carrier liable for the mill's lost profits because the carrier did not know, and should not have reasonably known, that delay in delivering the shaft would cause the mill's entire operation to shut down. *Id.* The court held that recovery is only allowed for damages "as may fairly and reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as a probable result of the breach of it." *Id.* The rule from *Hadley* has been adopted in Tennessee. *See, e.g., Wills Elec. Co. v. Mirsaidi*, No. M2000-02477-COA-R3CV, 2001 WL 1589119, at *4 (Tenn. Ct. App. Dec. 13, 2001) (citing *Turner v. Benson*, 672 S.W.2d 752 (Tenn. 1984)).

Thus, "foreseeability is the touchstone of contract damages" in Tennessee. *Metro. Gov't of Nashville & Davidson Cty., Tenn. v. State St. Bank & Tr. Co.*, 187 F. App'x 511, 514 (6th Cir. 2006). Tennessee courts "permit the recovery of damages that are the normal and foreseeable result of a breach of contract." *Nat'l Door & Hardware Installers, Inc. v. Mirsaidi*, No. M2013-00386-COA-R3CV, 2014 WL 3002007, at *5 (Tenn. Ct. App. June 30, 2014) (quoting *Wilson v. Dealy*, 434 S.W.2d 835, 838 (Tenn. 1968)). Damages are a foreseeable result of a breach if they "may be reasonably supposed to have entered into the contemplation of the parties." *BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001) (quoting *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 903 (Tenn. Ct. App. 1995)). Conversely, damages are too remote if they "could not have been contemplated by the parties as the natural result of any breach of the contract." *Hennessee v. Wood Grp. Enter., Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991); *see also Baker v. Riverside Church of God*, 453 S.W.2d 801, 809 (Tenn. 1970) ("[D]amages which do not arise naturally from a breach of the contract, or which are not within the reasonable contemplation of the parties, are not recoverable."). Put another way, damages will not be awarded

unless they reasonably should have been "contemplated by the parties as being at the heart of the contract." *St. Clair v. Local Union No. 515 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 422 F.2d 128, 132 (6th Cir. 1969) (applying Tennessee law).

PSC must therefore show that, when the parties signed the LOI, they reasonably should have understood that breach of the exclusivity provision might subject the breaching party to damages equal to the full expected value of the proposed deal. Southern contends that, in agreeing to negotiate exclusively, the parties could not have contemplated liability for failure of the eventual transaction. The court finds that Southern has the better position on this issue.

The parties could not have reasonably contemplated that breach would expose them to full expectancy damages for a deal that did not exist in any enforceable form. Without formal agreement on any substantive terms, the parties had no basis from which expectancy damages could flow. "Parties cannot have a justifiable expectation of what a contract will be at the preliminary stage as there are many open terms and the other party may have countervailing expectations of the definitive agreement." Violeta Solonova Foreman, *Non-Binding Preliminary Agreements: The Duty to Negotiate in Good Faith and the Award of Expectation Damages*, 72 U. Toronto Fac. L. Rev. 12, 16–17 (2014). "While a final enforceable contract is a fixed instrument, a preliminary agreement is an amorphous one, and as such any expectation of final terms is only a reflection of an individual party's desire for finality." *Id.* at 31–32.

That the parties could not have reasonably contemplated enforcement of the LOI's terms is clear from the face of the agreement. "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The purpose of interpreting a written contract is to ascertain and give effect to the contracting parties' intentions,

and where the parties have reduced their agreement to writing, their intentions are reflected in the contract itself." *Pylant v. Spivey*, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003). Courts should thus ascertain parties' intentions "based upon the usual, natural, and ordinary meaning of the language used." *Id.*

The LOI was titled "Non-Binding Letter of Intent" and included repeated disclaimers of any intent to be bound as to the substantive terms of the proposed deal. (*See, e.g.*, Docket No. 75-2 at 1 ("[W]e are providing this non-binding letter of intent based upon several key assumptions.").) Most significant of these disclaimers are those set forth in the "Definitive Agreement" and "Statement of Intention Only" sections:

Definitive Agreement

The proposed transaction shall be effected pursuant to, and subject to, conditions contained in the Definitive Agreement between and negotiated by [Southern] and PSC and containing all of the terms and conditions of the contemplated transactions with such representations, warranties, and conditions as are agreed upon by the parties.

. . .

Statement of Intention Only

It is understood that this letter, if accepted by [Southern], represents our mutual interest in principle only, except as set forth in the last sentence of the paragraph. No party shall in any way be bound to consummate the transaction until a definitive agreement is executed containing terms, conditions, representations, warranties [sic] as are appropriate and which are agreed upon by the parties. . . . This letter is not an agreement to agree and no party shall be obligated hereunder except as set forth above under the captions "Confidentiality," "Publicity" and Exclusivity."

(Docket No. 75-2 at 5.) The plain language of these sections precludes any reasonable contemplation that the LOI's substantive terms might be enforceable.[2] In light of these

---

[2] In its Brief, PSC insists that loss of its expected acquisition benefits was a foreseeable consequence of Southern's breach because, "in point of fact, this exact consequence is why a potential purchaser insists on an exclusivity provision." (Docket No. 155 at 7.) But the record indicates that expected benefits are not what PSC had in mind when it insisted on the LOI's exclusivity provision. In its Complaint, PSC states explicitly that it sought and secured the

8

disclaimers, Southern could not have had "such notice as would give [it] to understand that a breach" of the exclusivity provision would "probably result" in injuries pegged to the LOI's terms. *Moulds v. James F. Proctor, D.D.S., P.A.*, 1991 WL 137577, at *9 (Tenn. Ct. App. July 29, 1991) (quoting *Ill. Cen. R.R. Co. v. Johnson & Fleming*, 94 S.W. 600, 601 (Tenn. 1906)).

Other courts have reached similar conclusions in comparable cases. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 962 (9th Cir. 2001) (finding that expectation damages were not available for breach of preliminary agreement because the agreement was explicitly non-binding as to substantive terms) ("At four locations in the [Letter of Understanding] the lack of commitment to the ultimate sale is apparent."). The case most on point is *Logan v. D.W. Sivers*

---

exclusivity provision in order to protect its outlays expended in furtherance of the parties' negotiation:

> 18. As part of evaluating the potential acquisition of Southern's assets and conducting due diligence, PSC would be required to spend substantial amounts of time and money.
>
> 19. Given PSC's substantial commitment of time and money, it was key to PSC that Southern not attempt to negotiate simultaneously with PSC and any other potential third party suitor.
>
> 20. To that end, PSC negotiated for and obtained a binding exclusivity commitment from Southern . . . .

(Docket No. 9 at 3.) PSC's CEO, Ron Kline, confirms this motivation in his Declaration:

> 10. PSC incurred substantial internal and third-party costs in connection with its pursuit of Southern's Nashville operations, including environmental due diligence costs and outside counsel costs.
>
> 11. PSC would not have incurred third-party expenses in connection with its pursuit of Southern had Southern been unwilling to agree to exclusivity.

(Docket No. 75-1 at 3 (Decl. of Ronald Kline).) The proposition that PSC insisted on the exclusivity provision because it worried it might lose out on the value of the potential deal is seemingly belied by PSC's own words. Nonetheless, the court determines the parties' intent from the words as written in the contract. The LOI leaves no doubt that the parties did not intend to expose themselves to expectancy damages.

*Co.*, 169 P.3d 1255 (Or. 2007), in which the Oregon Supreme Court held that expectancy damages were not available for breach of an exclusivity provision. The facts of *Logan* are analogous to this case: a property owner agreed to sell property to the plaintiff but, despite entering into a letter of intent that contained an exclusivity provision, negotiated a better deal and sold the property to a third party. *Id.* at 1257. The Oregon Supreme Court repeatedly emphasized that the parties' agreement was, like the LOI in this case, specifically non-binding as to its substantive terms:

> The parties clearly intended, and clearly had the right to expect, that that disclaimer would shield them from any liability for failing to carry through with the sale that then was being contemplated. . . . [T]he parties were at pains in their letter of intent to identify what they were not agreeing to do: Defendant was not agreeing to sell, or even to negotiate in good faith toward selling, and plaintiff was not agreeing to buy, or even to negotiate in good faith toward buying, the property in question. . . . [B]ecause defendant never agreed to sell or even to negotiate in good faith toward the sale of the property to plaintiff (and, in fact, explicitly disclaimed any such agreement when it signed the letter of intent), plaintiff cannot, under this contract, charge defendant with losses that flowed from her inability to finally purchase it.

*Id.* at 1262–63. The court finds the Oregon Supreme Court's reasoning persuasive. Because Southern did not agree in any legal sense to the LOI's substantive terms, it could not reasonably have foreseen that it might be liable for expectancy damages based on those terms by breaching the exclusivity provision.

The cases upon which PSC relies are inapposite. Each involves a breach of the duty of good faith and fair dealing. The leading case is *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 96 F.3d 275 (7th Cir. 1996), in which Judge Posner detailed how, at least theoretically, expectancy damages might be recoverable for breach of a preliminary agreement's good faith requirement:

> [I]f the plaintiff can prove that had it not been for the defendant's bad faith the parties would have made a final contract, then the loss of the benefit of the contract is a consequence of the defendant's bad faith, and, **provided that it is a foreseeable consequence,** the defendant is liable for that loss—liable, that is, for the plaintiff's consequential damages. The difficulty, which may well be insuperable, is that since by hypothesis the parties had not agreed on *any* of the terms of their contract, it may be impossible to determine what those terms would have been and hence what profit

10

the victim of bad faith would have had. But this goes to the practicality of the remedy, not the principle of it.

*Id.* at 278–79 (Posner, J.) (bolded emphasis added, italics in original). The court agrees that it is hypothetically possible for breach of a preliminary agreement to foreseeably give rise to expectancy damages. However, as explained above, given the LOI's categorical disclaimers, this is not that case. Moreover, as the court noted in its previous Order, the LOI includes no duty to negotiate, in good faith or otherwise. (Docket No. 63 at 4.) That distinguishes this case from those cited by PSC. There is good reason to treat breach of an exclusivity provision, standing alone, differently from breach of a duty to negotiate in good faith: provisions mandating good faith negotiations are tailored to facilitate successful completion of a deal, while exclusivity provisions protect the parties' investments made in furtherance of negotiation. *See Logan*, 343 Or. at 354 "[D]efendant's nonsolicitation promise was directed to the *manner* of the negotiations and not to their *outcome*, and the damages that may be deemed to have arisen from defendant's breach of that promise are similarly limited." (emphasis in original). PSC cites no case, and the court is not aware of one, in which a court awarded expectancy damages based on a breach of an exclusivity provision without a corresponding breach of a duty to negotiate in good faith.

As the court has noted previously, PSC and Southern are sophisticated parties. Had they wanted to protect their expected gains via the exclusivity provision, they could have included a provision mandating that the parties negotiate in good faith. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 667 (Tenn. 2013) ("The parties could have inserted either provision into the Agreement, and either provision would generally have been enforceable as reflecting the bargained-for intent of the parties."). Or they could have included a binding liquidated damages provision roughly equivalent to anticipated benefit of the bargain damages. *See Airline Const. Inc. v. Barr*, 807 S.W.2d 247, 260 (Tenn. Ct. App. 1990) (liquidated damages

11

provisions are enforceable in Tennessee); *Smith v. Am. Gen. Corp.*, No. 87-79-II, 1987 WL 15144, at *8 (Tenn. Ct. App. Aug. 5, 1987) ("Parties to a contract may account for damages not usually awarded by law within the stipulated damages clause."). They chose neither. Courts "should tread cautiously when asked to recognize and enforce implied obligations that are not reflected in a written contract", in order to "ensure[] that contracting parties have 'the right and power to construct their own bargains.'" *Dick Broad Co. of Tenn.*, 395 S.W.3d at 673 (Koch, J. concurring) (quoting *Planters Gin Co.*, 78 S.W.3d at 892).

This caution comports with the principles courts must keep in mind when enforcing preliminary agreements. "A primary concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations that they never intended." *L-7 Designs, Inc. v. Old Navy, LLC*, 964 F. Supp. 2d 299, 308 (S.D.N.Y. 2013). "It seems . . . paradox[ical] to foist the peculiar and special consequences of an agreement on parties who have not in fact agreed." *Venture Assocs. Corp.*, 96 F.3d at 281 (Cudahy, J. concurring). Limiting recovery for breaches of exclusivity provisions to reliance damages best protects the parties' intentions. A contrary result raises the specter that "preliminary negotiations may be pyramided into a demand indistinguishable from a claim for breach of contract." *Id.*

The Tennessee Supreme Court has expressed concern over the disincentivizing effects of extending expectancy damages too broadly:

> A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business life. The effect would often be to impose a liability wholly disproportionate to the nature of the act or service which a party had bound himself to perform.

*Baker*, 453 S.W.2d at 810. The court cannot conclude that the Tennessee Supreme Court would open contracting parties to such a risk. For the foregoing reasons, the court finds that the

Tennessee Supreme Court would not allow expectancy damages for breach of a letter of intent's binding exclusivity provision based on other, non-binding terms within the letter of intent.

The result is not an inequitable one for PSC, which remains entitled to reliance damages, as it contemplated when seeking the exclusivity provision. The goal of reliance damages is to allow recovery for efforts undertaken to a party's detriment. Restatement (Second) of Contracts § 349 (1981). "These damages include the expenses the injured party incurred in preparation and part performance of the contract." *E. Sky Prods., Inc. v. Ram Graphics, Inc.*, No. 01-A-01-9305-CH00215, 1994 WL 642760, at *4 (Tenn. Ct. App. Nov. 16, 1994). To the extent PSC can prove expenditures and investments based on Southern's promise of exclusivity, it will be put back in the position it would have been in, had Southern not agreed to exclusivity in the first place.

## CONCLUSION

For the foregoing reasons, PSC is not entitled to expectancy damages for Southern's breach of the LOI's exclusivity provision.

It is so **ORDERED**.

ENTER this 4th day of March 2019.

ALETA A. TRAUGER
United States District Judge